May it please the Court, Bruce Kastetter on behalf of the United States. This is a government appeal from an order of the District Court dismissing the indictment based on the grounds of the appearance of indictee prosecution. No actual appearance, just a quick summary of the facts that show the Court's concern. This particular defendant was stopped twice at the border in October, consecutive days. Each time she had two illegal aliens in her car and each time she confessed that she was smuggling those aliens for money. She was not prosecuted. Two months later or three months later she came back and this time she was smuggling drugs and she was prosecuted. She took the stand at her drug trial and said my defense is I'm not a drug smuggler, I'm an alien smuggler. I thought I was smuggling aliens, just like the two prior occasions. And she gave full confessions to those two prior occasions on the stand in front of the judge, the jury, under oath of her attorney present. At that point the government filed a complaint charging her with those two prior alien smuggling events. The trial court was concerned of the appearance. He thought it was a chilling of her ability to take the stand and testify in her defense. The government explained to the trial court, Your Honor, the fact that she took the stand had nothing to do with our decision to prosecute her. What made us prosecute her was the content of what she said. A judicial confession under oath with her attorney present tremendously improved the quality of our proof and two, it's something we just can't walk away from. We can't have people confessing to crimes and just not being prosecuted. A lot of people would say you shouldn't walk away from two consecutive violations when they find aliens hiding in her car and let her walk away from that. That is true, Your Honor, but that is a traditional allocation of resource issues that we deal with all the time. We'd love to do every prosecution if we could, we just can't do them all. You wait until the third time they come across, I guess. Sometimes they can come across the third time, we might not do it. It just depends on a lot of different factors I think is difficult to explain to this court, but I can tell you some of them. I know there are a million arrests and it's a huge burden, but I guess you have a complete confession later at the time of just about the start of the drug trial. During the trial or before the trial? I think just before it was. She confessed when she was arrested on the drugs to the alien smuggling events again. That's correct. With a warning? She was, yes, in the drug case she definitely had Miranda. That's true. So you're pretty well equipped right there. You could, Your Honor, but we don't do these, most of the time we don't do these border bus cases with confessions unless they're videotaped now because we have lost trials where we had non-videotaped confessions. We've hung juries with non-videotaped confessions. We've all been in enough courts to know that you can chip away at those, I didn't mean what I said, they threatened me. No, no, I said I got paid to drive the car. I didn't tell them I got paid to drive the people. Those are things we take into consideration, but when you have a judicial confession under oath with your attorney present, that's unassailable. There's nothing you can chip away at that. Well, I think perhaps the point in this is that you take, I accept what you say, of course, and of course you have to allocate your resources. You have a tremendous volume of cases down there. But once you've made the decision to prosecute her on the one count, delaying the prosecution on the second potential count could be construed as problematic. You mean prosecute her on the drugs but not the aliens? Right. I don't think that really is a problem, Your Honor. I think this Court in the United States v. Allen made it pretty clear that we can make those kind of decisions. Oh, sure. Separate, unrelated crimes. We can wait to see what happens on one crime, what the result is, before we decide whether to proceed on another. But the point I'm making is, I guess, the trial court ruled, and its ruling itself demonstrates that there was no due process violation here, because the trial court said, the government explained to me their reasons. I have no reason, and nothing I say here today is meant to indicate that I don't believe what they said. Nothing here I say today is meant to mean that I think it is something improper or wrong. I don't like the way it looks. That, I think, and the trial court also said, nothing I say here today is in relation to reality. And I think what he meant by that was, I think it's fair to characterize that ruling as, I'm finding there was no actual mendicantness. Yes. I think it's an appearance case, not an actual. But I think his finding that there's no actual means that we have to prevail. There is no due process violation, because under U.S. v. Goodwin, the law is clear. Even if a defendant meets its burden to establish an appearance of mendicantness, which we don't concede happened here, and I'd like to talk about it for a minute, but we don't think that happened here, the government has the opportunity to come back and explain, no, there were valid reasons to prosecute this case, unrelated to any retaliation, and if the government does that, Goodwin makes clear there is no due process violation, so there can be no dismissal of the counts. We do have cases where we've said, you know, we don't impugn the good faith of the government, but this is still, you know. No, there are cases where you can have such a strong presumption of indignance that you don't have to find actual. I agree with that, but this is not this case. If you look at the Supreme Court jurisprudence, they have never extended the appearance of mendicantness beyond the facts or the kind of facts in North Carolina v. Pierce and Blackledge. And those are both cases where the defendant exercised some right that caused a trial that had already been completed to be completely done. And the Supreme Court said, you know, in that situation, given the institutional bias against redoing things that have already been completed, it's fair to infer possible mendicantness. We don't have that in this case. We didn't have to redo it. Nothing was done by the time we filed these charges. And let me say this. To establish the appearance, there has to be a real possibility of actual mendicantness. Where do you get that in the case law? I mean, there's Alvarado, Sandoval. Let me just read you from that. Appearance of vindictiveness, not vindictiveness, is in fact, is the touchstone of Blackledge, Pierce, and other cases. They attempt to distinguish it and go on to say, but here the appearance of vindictiveness existed. It's immaterial that there was actual. It goes on to say that. Now, I can understand your argument that there was no appearance, but I think that it's pretty clear that that's the standard that we have. That case decided, Your Honor, before Goodwin. Goodwin was decided in 1982. And I suggest Goodwin really sets forth the law in this area. It makes it clear, yes, you can bring, you can establish appearance, but the government came back and established that there was, in fact, no actual. So what post-Goodwin case do you have from our circuit that indicates that? That what, Your Honor? That the appearance of vindictiveness standard has been abrogated in our circuit. No, there is still a doctrine of appearance of vindictiveness. I'm not disputing that. You can demonstrate that. What I said was the Supreme Court has never extended it beyond the Blackledge, North Carolina v. Pierce factual type situation. I grant you that, but in our circuit that we have Blackledge, Pierce, and all those cases being applied, although I grant you it's pre-Goodwin, to say that appearance is the touchstone, not actual. So we've construed all those cases a little, perhaps a little more broadly. All the cases that the defendant cites are pre-Goodwin. Cases I've cited for numerous reasons why the appearance doesn't apply in this case are like Martinez, which says, if the new charges arise out of a totally separate factual event than the old charges, then there's no presumption of appearance. The Baker case, I don't actually remember if Baker was a vindictive prosecution or not. Baker is the case where the defendant took the stand, confessed to another crime in trying to exonerate himself of the crime he was being charged with. This court held it was proper to charge him with those crimes that he had confessed to on the stand. Let me see. There's the Allen case that says we can wait until we find the result of a pending case before we bring, decide whether or not to bring a case. And the point I would like to make here, too, there is no real possibility that the government was trying to chill this defendant from testifying or other defendants from testifying. I'm not being sarcastic when I say, is there anybody in this courtroom that really thinks the government doesn't want, in one of these border bus case, a defendant to say, you know what, I'm a crook. I was a crook in the past. I thought I was committing a crime today. I just thought it was a different crime. I have no motive to keep her from saying that. I mean, I'd love that if I get that in every case. These border bus cases usually are the weakest when we sit down and rest. We have our fingers crossed in all these cases. Please take the stand and give me something to work with. There is no real possibility that we're trying to chill a defendant from testifying in her drug trial. None. Roberts. Thanks, Mr. Castaner. We'll give you some time for rebuttal. Thank you. Yeah. It's nice to see you at the same table. May it please the Court. My name is Martin Molina, and I was appointed by the District Court to represent Sharon Ann Jenkins in the underlying case, and my representation of her continues before this circuit. This Court should affirm the judgment in this order of dismissal on vindictive prosecution grounds. The rule is that when facts indicate a realistic likelihood of vindictiveness, a presumption arises, regardless of the intent of the government, and the burden shifts to the government to provide independent, non-pretextual evidence justifying the reasons for the action. And as this Court has said in United States v. Royska-Martinez, this is a very heavy burden. Judge Benitez made the following factual findings, that on October the 19th, Mrs. Jenkins was detained at the port of entry with aliens in the car, and at that time she confessed to the crime of alien smuggling. No charges were filed. She was released. The following day again, Mrs. Jenkins was detained at the port of entry with aliens in the car. She confessed to the crime, and again the decision was made not to prosecute her. On early January, she was apprehended at the port of entry in a van that was found to contain, concealed in its interior marijuana. When she was interviewed by the agents, she again, she told the agents that she believed that she was carrying an undocumented alien in a secret warehouse, and she told the agents about the incidents of October the 19th and October the 20th. The government chose to only charge her with drug importation and possession with intent to distribute marijuana. On the month of April, the case on the drug trial began. Again, the government did nothing about the alien smuggling charges. The government then eventually rested its case. The government did nothing about the alien smuggling charges. Mrs. Jenkins took the stand on her own defense, and she testified that she believed that she was bringing in an alien, not marijuana. And in order to buttress her defense, she told the jury about the October the 19th and October the 20th incidents, which was the same confession that she had told the agents when she was arrested on the drug charges and when she was arrested on the drug charges and when she ended her testimony, the government went on and filed a complaint for alien smuggling charges. Judge Benitez found that the filing of the charges after Mrs. Jenkins had exercised her constitutional right to testify on her own defense created a presumption of vindictiveness, and Judge Benitez gave an opportunity to the government to explain itself, to rebut away the charges. The supervising assistant United States attorney that personally authorized the filing of the charges against Mrs. Jenkins went before Judge Benitez in answer to Judge Benitez, and he said that the reason why the charges were filed was because they now had an in-court testimony, a judicial confession, so to speak, and that they could not walk away from it. But the supervising assistant United States attorney also conceded to have been arrested with the drugs. In fact, the word that the supervising assistant United States attorney used was unquestionably. We could have filed the charges early on. Judge Benitez ruled that this explanation, and he took the government by its word. He did not doubt that that was the reason why they decided to file the charges. But he took it by the word and he said this reason is not sufficient enough to rebut the presumption of vindictiveness, because in Judge Benitez's own experience as a judge, he said cases in this district are prosecuted and are proven, in those words, are proven on much less than what they had when they arrested Mrs. Jenkins on the drug charges, noting that at that time they had two confessions for each of the two incidents. Judge Benitez said something which mirrored the lessons of the Ninth Circuit and also the lesson of Blackledge, which he said, look, I'm not saying that the government did anything wrong here, but it is necessary for me to step in and dismiss this indictment in order to prevent the chilling of a defendant's decision to exercise a particular right. And in so saying, he basically borrowed the words from DeMarco and Motley, where this circuit said that it is necessary to prevent the chilling of the exercise of such rights by other defendants who must make their choices under similar circumstances in the future. And those were also the words from Blackledge. But, you know, I think there's some force to the government's argument that basically, I don't think Mr. Kastner quite put it this way, but if we accept the fact that you go on the stand and confess to other crimes and that if later prosecuted, it will be dismissed on the basis of apparent vindictiveness, then basically you're creating used immunity for the testimony given. And I don't think that's the purpose of the law. And I'm not saying that that is, because that is why this circuit requires the government to come in with an explanation. And I'm going to give you an example. The case relied by the government, Baker. In Baker, the defendant was charged for being the felon in possession of a firearm on October, on a specific date, October of that year, 1975, I think it was the year. And he, and it was because a weapon was found in the car that he was driving. And he took the stand on his own defense and he said, he testified that he had purchased that weapon and that he had even fired it on a date of July the 5th, 1975, but that afterwards he found out that he was not supposed to own a weapon and he instructed his defense to stop the mistrial because of some unrelated evidentiary matter, and the government came back and charged him with being a felon in possession on the July 5th date on the basis of his testimony. Well, in that case, the government did not have any previous evidence about the July 5th possession, and they obtained that evidence through his own in-court testimony. But in Mrs. Jenkins' case, she testified exactly as to what she had told the agents the days that she was detained on the alien-smuggling charges and the days she was arrested on the drug charges. So the information that she conveyed through her testimony was exactly the same information that they knew and that they had obtained from herself. So this is not the case where Mrs. Jenkins is taking on the stand and testifying about other crimes and now saying, telling the government, you can't prosecute me for these crimes, because the government knew about those crimes and they had her confession of those crimes. In Baker, the government did not know about Baker's possession of the firearm on July 5th. So that is why this, the proposition that I'm advocating is not to give basically someone impunity to confess to a crime during testimony and then prevent the prosecutor from initiating criminal charges against that person. Another case that I should mention, Martinez. The government brought up the Martinez case. Martinez is a different case. It's completely, it involves separate unrelated charges. And in Mrs. Jenkins' case, both charges are related because the alien-smuggling offense became the core of her defense in the drug trial. And they were intertwined from the time that she was arrested on the drug charges because that's, she made it part of her defense. And one thing that the government mentions throughout its brief is that, look, if they're two related, two separate charges, the presumption cannot arise. As I said, these charges are not related. This court in DeMarco said, and DeMarco is the case involving where the defendant was first charged with filing false tax returns for President Nixon, and then he moved for a change of venue. He got it, and the government came in and added a new charge for lying to IRS agents. The government said, look, the government said, presumption cannot arise. They're separate charges. And DeMarco said, even if the two charges are the same, trial on the other, that situation is not going to distinguish it from blacklash. And again, this court related the same, used the same language in Groves. One charge for possession of personal use of cocaine, and the other charge was conspiracy, a marijuana conspiracy. This court, again, said exactly the same. Let me see if I'm forgetting something. And again, the focus, the government said that, look, we would not want to shield a defendant's decision to testify. The focus is not what the government intended. The focus is what kind of effect it's going to have on a defendant. And that was the focus of blacklash versus burying. The due process requires, protects a defendant from that feeling of apprehension at the time that defendant is going to decide whether or not to test, to exercise a particular right. Yes, but in most of the time, as you concede, if the government didn't know about a crime and the defendant testifies to having committed some other crime, the government can go ahead and charge it. That is correct. But isn't that just as likely to chill, even more likely to chill testimony than when you tell them about something they already knew? Well, that is why the Court requires that the government come in with an objective, nonpretextual reason in order to justify the new charges. But when the reasons are not there, when there is not, when there has not been a material change in circumstances that properly bear in prosecutorial discretion, then the burden has not been rebutted. Well, I understand your point, but I guess you're saying that we have to do this because it's going to chill defendants' election to testify, generally speaking. But when defendants testify and talk about crimes they have committed, 90-some percent of the time they're going to be crimes the government didn't know about, and the government is going to be free to charge them. And I would think that's just, that sufficiently chills defendants from testifying to crimes, and we don't prohibit the government from prosecuting in those cases. Well, and this Court has said so. This Court has said, look, we're not going to give impunity. We're not going to allow someone to testify about a crime with impunity, not expecting to be prosecuted. But when the government knows about it, when the person has already told the government, not once but twice, and then the defendant exercises a particular right and the government comes back and files charges against that person, not learning anything new, then that is what creates the due process rights violation, because the defendant is, has already told the government, and there has not been a material change in the circumstances. And in this case it was not a material change. The government had a watertight case against Mrs. Jenkins on alien smuggling charges when they arrested her on the drug charges. Nothing, there was not a material change. They had now an in-court testimony. We probably didn't have a case that was 99.1 percent strong moved to a 99.9 percent. Not a material change. Not on something that bears on the factors that prosecutors use to utilize their discretion. And that was, that's the language in Martinez. In Martinez, this Court specifically said that nothing in blacklist is presumed to prevent a prosecutor from bringing new charges as a result of changed circumstances which properly bear on prosecutorial discretion. And there was not a material change in this case. They never had a doubt about Mrs. Jenkins' case. The supervising assistant to the United States attorney did not tell Judge Benitez, look, we had problems, we realized that we had problems at the beginning when we arrested her on the alien smuggling charges, and that's why we decided not to file charges early on. They never said that. Why? Because they could not tell that to Judge Benitez. Why? Because Judge Benitez knew that cases in this district are proven on much less than what they had against Mrs. Jenkins. They had no doubt and they had a very solid case against her. They did not have the slightest doubt on the strength of their case. Lo and behold, she testifies about the alien smuggling incidents and they charge her with that. There was not a material change in the case against Mrs. Jenkins. That is why I respectfully request that this Court affirm the order of dismissal by Judge Benitez. Thank you, Counsel. Thank you, Your Honor. Caster, we'll give you two minutes. Thank you, Your Honor. What I was trying to say, and maybe I didn't do it very artfully, is this, I interpret what Judge Benitez is saying as a finding, there was no actual mendicantness. What I'm saying is if that is correct, then under Goodwin, there is no due process violation. Thank you, Major. Oh, I'm sorry. I thought I was confusing myself and maybe the Court when I was trying to go through this. No, I took your point. But as to prior knowledge, that is not to test the appearance of mendicantness. In Goodwin, there was prior knowledge. In Martinez, there was prior knowledge. In Allen, there was prior knowledge. In Third and Herbert, there was prior knowledge. That is not to test. The practical result of Judge Benitez's ruling is just as Your Honor noted. This defendant has given herself self-immunity. That can't be the case. It's not the case. That is not what the vindictive prosecution theory is all about. Isn't there an element here that basically, and I think you've sort of alluded to it by saying you couldn't ignore it, that it was all right if she confessed at the border, but when she confessed in court, it was sort of in the face of the government and they had to prosecute. There's a bit of an element of that, isn't there? Yeah, I think it was in the face of the court and the government, but the point that is. So does that necessarily perhaps imply that there might be a reactive motive? No, I really don't think so, because as the facts unfolded, if you confess in public, now the whole world knows you've confessed under oath and we walk away, that's substantially different than you confessing and we say, okay, this is not a serious enough case that this time we're going to prosecute. Don't do it again. I mean, that's a totally different factual scenario, totally. And to say nothing new came up is incorrect. It doesn't have to change the facts of the crime. It changes the quality of our proof, no question about that. I've never had a case where I had a defendant confess on the stand. I mean, we have to admit that is a substantially better. It's excellent evidence. Excellent evidence. You have pretty good evidence. We have pretty good evidence and we never denied that, no. What the suspicion may be is that it's just so embarrassing to the government to have this person get up and say, well, I was stopped twice hiding aliens in my car. And that's what I thought I was doing this time. Well, Judge Benitez didn't find that. He didn't indicate he had a concern with that at all. And I can tell you that wasn't a concern, but, I mean, Judge Benitez did not find that concern. I interpret what he said as I find no actual vindictiveness. What do you think our standard of review is? I think on the factual, it is in flux, as we say in our brief. I think on any factual issue, it's clear error. On a legal standard, it would be de novo. You know, it's difficult, just speaking for myself, on these kinds of cases. The district court is in such a better position than I feel that I am in judging some of these things. Why do you think we shouldn't adopt a more deferential standard of review? Well, we never do on legal questions. I mean, his factual – If error is a matter of law, as you claim, that's one matter. If it's a discretionary decision, how do you think we ought to review that? Well, like I said, if the discretionary decision is based on facts, I think that's clear error. And if it's just a pure legal question, then I think it's de novo. And Benitez did not find any bad faith or any wrongdoing or any – Judge Benitez. Judge Benitez. I'm sorry. I apologize. Judge Benitez did not find the government did. He didn't – in fact, he found the opposite. And just real briefly, the cases that the defendant relies on I think are of questionable validity now. Huesca, which is his main case, was a situation where the government filed a misdemeanor complaint. The defendant said, I'm not going to submit to magistrate authority. Government filed a felony dismissal of vindictive prosecution. Well, U.S. v. Goodwin, six years later, government filed a misdemeanor complaint. Defendant said, I'm demanding a jury trial. They filed a felony complaint. Goodwin said there is no appearance of vindictiveness. I think that at least puts Huesca in serious jeopardy of not being decided the same way if he became the court now. DeMarco is actually, if you look at the case, an actual vindictiveness case. There was a threat. If you exercise your right, we're going to pound you. That's what happened. That's an actual vindictiveness case in reality. We don't have any of that here. Thank you, Your Honor. Thank you very much. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Canby, Thomas, Conlon